## THE REDMAR.

## THE BERN.

## THE ASHBOURNE.

## In re MOTT HAVEN LIGHTERAGE CO.

### No. 11351.

District Court, E. D. New York.
April 15, 1931.

William F. Purdy, and F. C. Mason, both of New York City, for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (by J. Dudley Eggleston, of New York City), for claimant.

CAMPBELL, District Judge.

This suit was commenced by the libelant, the owner of the barge Redmar, to recover for the damages to said barge alleged to have been caused by the negligence of the steamtugs Bern and Ashbourne.

I find the facts as follows:

At all the times hereinafter mentioned, the libelant was and still is a New York corporation, and was on the day in question the owner of the barge Redmar, and the bailee of the cargo of said barge consisting of 346 tons of pea coal, bound from Port Reading, N. J. to 138th street and Harlem River, New York City.

The barge Redmar was, prior to and at the time of her being taken in tow, and up to the time of the happening hereinafter described, tight, staunch, strong, and in every respect seaworthy.

The steamtugs Bern and Ashbourne were, during the currency of process herein, within this district and within the jurisdiction of this court.

At 9:30 o'clock p. m. on August 9, 1928, the steamtug Bern, assisted by the steamtug Ashbourne, left Port Reading with a tow of eighteen boats in six tiers of three boats each.

The Redmar was the starboard boat in the second tier, the Reppelier was the starboard hawser boat, and the Liberty was the starboard boat of the third tier, towing under the stern of the Redmar.

The Liberty was not loaded as heavily as the Redmar and stood some four feet higher in the water than the Redmar, and in addition had a cutaway bow.

As the tow was made up, there were about three to five feet of line from the Liberty to the Redmar.

As the tow proceeded, the Liberty, by reason of her raking bow and the shortness of the lines between her and the Redmar, rode up on the stern of the Redmar, particularly on the port side.

The captain of the Redmar put out a line and a rubber tire, and at his request the captain of the Liberty several times slacked his hawser, but the Liberty continued to pound the Redmar on the port side of the stern, and inflicted damage, including the opening of her seams.

The steamtug Ashbourne assisted the Bern, acting under the orders of the master of the Bern, and was most of the time on the port side up near the head of the tow, or back at the stern on the port side, and for a short period at the stern on the starboard side up next to the last tier, but not at any time along the starboard side of the Reppelier, the Redmar, or the Liberty.

The fog set in thick, and in leaving the Kills the Bern took her tow along the Staten Island shore, passed the ferry, rounded to with the port side of the tow toward Staten Island, and made fast the tow to the lighthouse dock.

In rounding to, the starboard and not the port corners of the boats of the tow came together.

The captain of the Redmar had been up all the day before and that night, and after the tow was tied up he went into his cabin and fell asleep on the floor.

About 7 o'clock a. m., the captain of the Reppelier and the Liberty woke up the captain of the Redmar, and he barely escaped with his life, as the Redmar sank with her cargo, and both the boat and her cargo were damaged.

The Redmar was raised and taken to dry dock, where it was found that she had suffered damage to her stern, particularly on the port side, which had caused her to leak and finally to sink.

From the facts as found, it is apparent that there is no liability on the part of the steamtug Ashbourne, as she was a helper tug acting under the orders of the steamtug Bern.

The barge Redmar was seaworthy when taken in tow by the Bern. The captain's testimony on this point was not contradicted; furthermore, the uncontradicted testimony shows that she had been continuously employed in carrying cargoes of coal, and is still so employed, and that her stern had been almost completely rebuilt and had been recaulked in April, 1927.

The tow was not properly made up, as the placing astern of the Redmar of the Liberty, having a raked bow and standing so much higher in the water than the Redmar, on such short lines as three or five feet, subjected the Redmar to pounding on the stern by the Liberty riding up on her.

For the making up of the tow the Bern was responsible, and it was guilty of negligence in making it up in an improper manner.

Such a condition was not reasonably to be expected, and it was not proof of unseaworthiness on the part of the Redmar that she was caused to spring a leak as the result of such pounding.

The pounding by the Liberty to which the Redmar was subjected was sufficient to open the seams of the Redmar and cause her to leak, even if no timbers were broken where the pounding occurred.

The captain of the Liberty says he did not see her in contact with the Redmar, and this may be true, but he must have known that she was pounding the Redmar, as he says he three times slacked his lines because of the request of the captain of the Redmar.

The pounding on the stern of the Redmar by the Liberty opened the seams of the Redmar and caused her to leak, and the leaking of the water was not readily discoverable by her captain, but it caused her to list to port, and finally to sink.

I find as conclusions of law:

That the steamtug Bern negligently made up the tow by placing the Liberty, a boat with a raked bow and much higher freeboard, astern of the Redmar, on such short lines that the Liberty was permitted to and did ride up on and pound the stern of the Redmar, causing her seams to open, the boat to leak and list to port, and finally to sink, and doing other damage to the Redmar and to her cargo.

The libellant is entitled to recover its damages from the steamtug Bern, with interest and costs, and to have the usual order of reference to determine the amount of its damages.

The steamtug Ashbourne is entitled to a dismissal of the libel, with costs against the libelant.

A decree may be entered in favor of the libelant against the steamtug Bern, with interest and costs, with the usual order of reference; and in favor of the steamtug Ashbourne dismissing the libel, with costs against the libelant.

Settle on notice.

If this opinion is not considered a sufficient compliance with Rule 46½ of the Rules in Admiralty, proposed findings of fact and conclusions of law may be submitted, in accordance with this opinion, to aid the court.